IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ex rel., BETTY MANION AND LYNDA EVERSON,<br><br>            Plaintiffs,<br><br>v.<br><br>ST. LUKE'S REGIONAL MEDICAL, CENTER, LTD., AND JOHN/JANE DOES I THROUGH X, WHOSE TRUE IDENTITIES ARE PRESENTLY UNKNOWN,<br><br>            Defendants. | Case No. CV 06-498-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court are Plaintiffs/Relators' Second Motion to Compel Responses to Second Set of Requests for Production (Docket No. 91) and Plaintiffs/Relators' Motion for Attorney Fees (Docket No. 92). Having carefully reviewed the extensive briefing and other materials submitted by the parties and the record, as well as holding oral argument on the motions, the Court issues the following Order, consistent with the direction provided to the parties by the Court on the record upon conclusion of hearing oral arguments on April 7, 2010. .

**I. Introduction**

This is just one in a series of discovery disputes between the parties to this litigation. Plaintiffs/Relators ("Relators") filed their Second Motion to Compel on January 15, 2010, requesting the Court to order St. Luke's Regional Medical Center ("Defendant") to fully reply to their Second Set of Requests for Production of Documents and to verify their responses.

MEMORANDUM DECISION AND ORDER - 1

Relators contend that, after numerous meet and confer attempts, resulting in a voluminous collection of letters, Defendant continues to delay in providing them with meaningful and complete responses to their Second Set of Requests for Production originally served on Defendant on June 4, 2009.[1]

Specifically, the Motion to Compel requests the Court to order Defendant to provide complete and clear discovery responses to Relators' Second Set of Requests for Production; require Defendant to timely comply with their requests for claims payment data; and, respond to the requests for data relating to modifier 25 and low osmolar contrast material ("LOCM"). Relators also filed a Motion for Attorneys Fees based on their motion to compel, the previous motion to compel resolved by the Court on August 12, 2009 (Docket No. 85), and the current motion for attorney fees.

## II. Discussion

### A. Motion to Compel

The trial court has the discretion to order a party to produce documents or answer interrogatories. *Gen. Fire & Cas. Co. v. Guy Carpenter & Co., Inc.*, No. CV05-251-S-LMB, 2007 WL 683793 *4 (D. Idaho March 2, 2007). As a general rule, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . .. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

---

[1] Defendant served its responses to the Second Set of Requests for Production on July 17, 2009, responding that several of the documents would be produced once a protective order was in place. A protective order, based on the parties stipulation, was entered August 6, 2009. (Docket No. 84.)

MEMORANDUM DECISION AND ORDER - 2

**1. Complete Discovery Responses**

In response to Relators' contention that Defendant has failed to provide clear and complete responses to their Second Set of Request for Production, Defendant argues that its responses are not incomplete because discovery is still ongoing. Defendant submitted a status report indicating whether each of its responses to each request in the Second Set of Requests for Production is complete or in need of supplementation. If the response is not complete, the Defendant has identified the reasons for the lack of finality. (Addendum 1 to McKissick's Affidavit, Docket No. 93-5.) According to Defendant, it is still in the process of compiling, producing and creating documents in response to several requests except for the six requests discussed below regarding modifier 25 and LOCM, topics Defendant alleges are irrelevant to the current lawsuit.

**E-data**

With respect to e-data on a system other than the one containing the claims payment data, Defendant argues that it has not been produced due to Relators' own non-responsiveness and abandonment of their request for this data. Additionally, Defendant has requested that Relators share in the cost required for collection of the e-data. Relators replied that Defendant's claim of "abandonment" by Relators was a misrepresentation to the Court. However, during the hearing, Defendant's counsel indicated the existence of a plan Defendant was prepared to present to Relators for renewed efforts toward compilation of the e-data (from the PFS shared drive). Therefore, the parties were directed to discuss the production of e-data at a meet and confer

MEMORANDUM DECISION AND ORDER - 3

session ordered by the Court to take place following the hearing on April 7, 2010.[2]  Therefore, the Court will not address this e-data production further unless the parties cannot reach agreement on the format, scope, process, and deadlines for timely completing the production of this data.

### Boxes of Paper Documents

Also related to Relators' request for complete and clear responses, Relators point to 144 boxes[3] of paper documents produced by Defendant for Relators' review, inspection and copying.  Defendant contends that these boxes contain all of the paper records responsive to both sets of Relators' requests for production and include internal memos, letters, correspondence, emails, reference materials, claims information, documents gathered from Relators' work stations, documents gathered from individuals listed in Relators' Amended Complaint and other documents gathered by counsel.[4]  Relators are asking the Court to order that Defendant provide some "limited guidance" regarding the contents of the boxes.  Defendant argues that this is unnecessary as the documents were produced in compliance with Fed. R. Civ. P. 34 which allows a responding party to either label responsive documents to correspond to categories in the

---

[2] The Court recognizes that there has been some misunderstanding and potential mischaracterization of the parties' positions regarding the Relators' requests for e-data.  However, the Court will not address this issue further unless the parties are unable to resolve their dispute.

[3] The briefing refers only to 140 boxes of paper documents.  However, at the hearing, both parties referred to 144 boxes of paper documents.

[4] Relators contend that production of the 144 boxes of documents is only another indication that Defendant has engaged in "discovery gamesmanship" because the boxes include documents relating to modifier- 25 and LOCM which Defendant should have pulled and produced in an organized fashion so they were responsive to Relators' requests by category.  (Reply p. 6, Docket No. 97.)

MEMORANDUM DECISION AND ORDER - 4

requests or to produce them "as they are kept in the usual course of business." Fed. R. Civ. P. 34(B)(2)(e)(I). Specifically, counsel for Defendant, Sean McKissick, stated in his Declaration that the 144 boxes are marked according to the St. Luke's employee from whose office they were collected, and are organized and maintained in the order in which they were maintained in that employee's office. (McKissick Decl. Para. 10, Docket No. 98-1.) Further, Defendant's counsel represented to the Court at the time of the hearing that the documents contained in the 144 boxes consist of every paper record responsive to the various categories of documents included in Relators' Second Set of Requests for Production.

The Court accepts Defendant's counsel's representation as the verification sought by Relators regarding the documents contained within the 144 boxes. However, the Court finds that ordering Defendant to provide further guidance as to the contents of each of the boxes is not appropriate and will decline to do so.

**2. Verification**

In Relators' Memorandum in Support, Relators also requested that Defendant be required to verify any future responses to Relators' discovery requests. However, in Relators' Reply, they clarify that they are "not requesting re-verifications of discovery responses or verifications for the rolling production of claims payment data. Instead, Relators seek an order simply requiring Defendant to identify which documents are provided in response to which requests. If no documents exists or can be found in response to a specific request, St. Luke's should say so." (Reply, p. 4, Docket No. 97.) During oral argument, Defendant acknowledged its intention to provide written supplemental responses once all of the pending discovery responses are complete. The Court expects Defendant to timely follow through with its intention in this

MEMORANDUM DECISION AND ORDER - 5

regard. If Relators find these supplemental responses insufficient, Relators may bring the issue to the Court's attention at that time.

**3. Claims Payment Requests**

Relators request the Court to order Defendant to timely produce responses to the claims payment requests - or Request Nos. 25, 28, 31, 34, 37, 40, 43, 47 and 50. These requests seek information regarding the amount of money Defendant received in payment for claims under Medicaid, Medicare, and Tricare beginning in December of 2000 and through the present. This is electronic data that both parties agree was compiled by Defendant and produced on a rolling basis, although neither timely nor complete as alleged by Relators. Defendant has produced a significant amount of the data relating to these requests, including: all of the Medicare claims payment data and the Medicaid claims payment data for 2002 through the present, except for data related to modifier 25 and LOCM. (Supplementation p. 7, Docket No. 107). The parties agree that Defendant has not produced any claims payment data regarding Tricare claims.

According to Defendant, its failure to produce the balance of the data is based on the fact that records for Medicaid payments prior to 2002, as well as all records of payments from Tricare, are not available in an electronic format. After hearing extensive oral arguments regarding this issue, the Court ordered the parties to meet and confer to discuss how, when, and in what format the remaining information will be produced, including the claims payment data related to modifier 25 and LOCM which is specifically and more fully addressed below.

**4. Modifier 25 and Low Osmolar Contrast Material**

Relators also are requesting the Court to order Defendant to produce claims payment data and other e-data responsive to Requests for Production Nos. 46-51. These requests relate

MEMORANDUM DECISION AND ORDER - 6

to billings for modifier 25 and low osmolar contrast material ("LOCM").  Defendant objects to responding to these requests, arguing that they seek information irrelevant to Relators' claims in this action.

For discovery purposes, relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  *Gen. Fire & Cas. Co.*, 2007 WL 683793 at *4 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978)).  "Discovery is not limited to issues raised in the pleadings, for discovery itself is designed to help define and clarify the issues."  *Id.*  Discovery has its limits, however.  "District Courts need not condone the use of discovery to engage in 'fishing expedition[s]'" *Id.* (quoting *Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir. 2004)).

Relators contend that the data relating to modifier 25 and LOCM is relevant because modifier 25 is related to the allegations in paragraph 38(f) of their First Amended Complaint and LOCM is related to the allegations in paragraphs 24 and 25 of their First Amended Complaint.  Defendant contends that discovery regarding this data should not be allowed because neither modifier 25 nor LOCM is specifically referenced in the Amended Complaint and Relators failed to articulate a valid explanation as to how they could be relevant to this action.

Paragraph 38(f) of Relators' First Amended Complaint alleges that certain of Defendant's personnel rolled non-billable charges into codes that were eligible for reimbursement payments and that such billings were improper.  Examples specified in the pleadings include the rolling of radiation component codes into comprehensive codes and the rolling of intravenous infusion therapy treatments into chemotherapy treatments. (First Amended Complaint, Docket No. 15.)

MEMORANDUM DECISION AND ORDER - 7

Defendants contest the inclusion of modifier 25 into this paragraph of the complaint, because it was not stated specifically in the allegations and because it is unclear how modifier 25 relates to "rolling of charges." Instead, Defendant's claim modifier 25 relates to charges for an additional physician visit on the same day as a treatment/procedure. Relators reply that Defendant's interpretation is incorrect, further defining modifier 25 as: "A significant, separately identifiable evaluation and management service by the same physician on the same day of the procedure or other service." (Reply p. 10, Docket No. 97 quoting Current Procedural Terminology, 2007, App. A, at 353.) Relators allege that Defendant falsely billed for encounters with physicians that were not "significant, separately identifiable E&M services" by simply adding a modifier 25 and rolling a non-reimbursable, follow-up event into a new, reimbursable service. (Reply p. 10, Docket No. 97).

     Paragraphs 24 and 25 of the First Amended Complaint allege that Relators frequently brought their concerns about the false billing practices to the attention of officers, managers and employees of Defendant and that Defendant never corrected or improved its billing practices following these disclosures. (First Amended Complaint, Docket No. 15.) Defendant contends that, because these allegations are so generic and related to reporting, Relators have failed to meet their burden of demonstrating that the discovery requests are relevant to this action. Relators reply that LOCM is relevant because Defendant improperly billed for this service when patients did not present with the qualifying diagnoses required before LOCM was billed. Further, Relators contend that Relator Manion, as alleged in paragraphs 24 and 25 of the First Amended Complaint, discussed the false billing of LOCM with the Director of Patient Financial Services and performed an audit that identified a number of false billings and overpayments to

MEMORANDUM DECISION AND ORDER - 8

Defendant.

During oral argument, Defendant's counsel clarified that, prior to the filing of Relators' Motion to Compel and Supplementation, the Defendant did not fully understand how modifier 25 and LOCM could be relevant to Relators' claims in this action. However, Relators argue that their requests for claims payment data that includes modifier 25 and LOCM is consistent with the broad definition of relevance for discovery purposes. Defendant contends that, not only would retrieving and producing electronic data in response to request Nos. 46, 49, 47, and 50[5] be costly and time consuming, it pushes the broad interpretation of relevance too far because it would open up the door for several other requests tangentially related to the litigation. (Opposition p. 9, Docket No. 93).

Although the Court cannot determine, based on the information before it, whether the documents and data relating to LOCM and modifier 25 are necessary for Relators to prove the specific causes of action pled in this litigation, the Court finds that they are relevant under the broad scope of discovery allowed by the Federal Rules of Civil Procedure. This conclusion is supported by Defendant's collection of documents relating to modifier 25 and LOCM in preparation for this lawsuit and the inclusion of responsive documents in the 144 boxes of paper documents made available for Relators inspection. Therefore, to the extent they have not already been included in the 144 boxes of documents made available to Relators, all claims payment data and e-data responsive to Request for Production Nos. 46-51 should be produced by Defendant.

---

[5] However, Defendant has already produced paper documents responsive two remaining requests, Nos. 48 and 51, as these requested specific documents that were included in the ten boxes of documents that were produced in response to other discovery requests on September 2, 2009 and January 21, 2009. (Opposition p. 10, Docket No. 93).

MEMORANDUM DECISION AND ORDER - 9

The Defendant's objection to production based on relevant is overruled.

## B. Motion for Attorney Fees

Relators filed their Motion for Attorneys Fees (Docket No. 92-1) on February 1, 2010, requesting attorney fees and costs for bringing both the first and second motions to compel and the current motion for attorney fees pursuant to Fed. R. Civ. P. 37(a)(5)(A). (Memorandum in Support p. 2, Docket No. 92-1.) Relators contend that, due to Defendant's delay and "discovery gamesmanship," they should be awarded attorney fees in the amount of $60,217.00 for over 225 hours of time dealing with discovery issues.

Relators contend fees are appropriate under Fed. R. Civ. P. 37, 26(g)[6], and 26(b)(2)(B)[7]. Specifically, Relators contend that Fed. R. Civ. P. 37(a)(5)(A) is applicable because Defendant's position with respect to each motion to compel was not substantially justified. Fed. R. Civ. P.

---

[6] Relators also contend that sanctions against Defendant are appropriate under Fed. R. Civ. P. 26(g),because Defendant has refused to certify or verify its discovery requests. The Court disagrees. It is uncontested that Defendant's counsel has signed letters accompanying the documents produced after the formal written responses were served. Defendant has also agreed to verify a supplement set of responses when the production of all documents is complete. Further, Relators' Reply to Motion to Compel (Docket No. 97) Relators state "Relators are not requesting re-verifications of discovery responses or verifications for the rolling production of claims data." (Reply p. 4, Docket No. 97.)

[7] Relators argue sanctions are appropriate under Fed. R. Civ. P. 26(b)(2)(B) because Defendant has not demonstrated that e-data on the PFS shared drive is not reasonably accessible because of undue burden and costs. Relators contend that Defendant should be sanctioned because Relators have not abandoned their efforts to obtain electronic data from the PFS Shared Drive that has not been produced to date. The Court will not address the issue of fees relating to the e-data on the PFS drive at this time because Relators stated in their reply "Requests that supposedly require electronic data mining and cost-sharing between the parties are not at issue in this motion...." (Reply p. 5, Docket no. 97.) This was confirmed during the hearing, despite some miscommunication between the parties regarding either dismissal of or suspension of their e-data requests. Further, the Court ordered the parties to discuss the e-data issue during their meet and confer after oral argument was completed.

37(a)(5)(A) states:

> If the motion is granted - or the disclosure or requested discovery is provided after the motion was filed - the court must, after giving an opportunity to be heard , require the party or deponent whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if :
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

With respect to their first motion to compel, Relators contend they are entitled to attorney fees because they were the prevailing party and because the Defendant's opposition was not substantially justified.

The Relators prevailed on their first motion to compel to the extent that the Court ordered Defendant to "respond to the Request for Production No. 13 and to produce a privilege log compliant with Fed. R. Civ. P. 26." (Order p. 8, Docket No. 85.)  However, the Court did not find that Defendant's position was frivolous, particularly in light of United States Magistrate Judge Mikel Williams' previous ruling that the ten bankers boxes of documents at issue in Request for Production 13 had to be returned to Defendant.  With Judge William's Order granting Defendant's motion to compel return of the ten bankers boxes, fees were not awarded against Relators. (Order, Docket No. 41.)  Therefore, as the dispute regarding the ten bankers boxes has been resolved and no fees were awarded previously, the Court finds that an award of fees to Relators for their the costs of bringing the first motion to compel would be inappropriate in this case.

The main issue regarding the second motion to compel as expressed by Relators' counsel

MEMORANDUM DECISION AND ORDER - 11

during oral argument is Defendant's alleged undue delay and "discovery gamesmanship" in providing the claims payment data for Medicaid, Medicare, and Tricare requested in Relators' Second Set of Requests for Production. The story regarding the claims payment data is long and convoluted.

According to Relators, Defendant had agreed to complete a rolling production of this information by January 30, 2010. Defendant contends that it never agreed to a firm January 30 deadline and, instead, the January deadline was simply an aspirational goal. The majority of the claims payment data was produced beginning in early February 2010 through the end of March 2010, after Relators filed their second motion to compel.[8] (Reply p. 9, Docket No. 97; Supplement p. 5, Docket No. 107.)

With respect to the delay in production of the electronic claims payment data, Defendant contends that it did not cause undue delay or engage in discovery gamesmanship. Instead, Defendant contends that, because it created databases and templates for compiling the claims payment data, the process was time consuming and complicated. Further, Defendant had to resort to hiring an outside vendor to compile the data after appreciating that time constraints on Defendant's personnel would not accommodate the compilation. According to Matthew Morishita, one of Defendant's employees working on the project, the project required extraction of tens of thousands of lines of e-data on a per code per patient basis using customized software to provide information regarding nine different revenue codes over a ten year period. (Morishita

---

[8] The claims payment data for Medicaid between 2000 and 2002 and Tricare from December of 2000 to present had not been produced at the time of the hearing on April 7, 2010. Defendant argues that this information has not been produced because it is not available in electronic format, unlike the other data. Therefore, as previously discussed, the Court ordered the parties to meet and confer at the conclusion of oral argument to discuss how, when, and in what format this information will be produced.

MEMORANDUM DECISION AND ORDER - 12

Decl ¶ 5- 7, Docket No. 93-2.)

In Relators' Supplemental Argument filed on April 5, 2010, Relators argue that the deposition testimony of Mr. Morishita supports their contention that Defendant's delay was unnecessary. According to Relators, Mr. Morishita's testimony proves that Defendant unreasonably delayed production, because Mr. Morishita completed the first sample template for the claims payment information around September/October of 2009. Further, Relators contend that Mr. Morishita had all of the data necessary to amass all of the claims payment information around the same time period. Therefore, Relators' argue that their second motion to compel was necessary to get Defendant to begin the promised rolling production of the claims payment data. In support of this conclusion, Relators also note that Defendant did not hire an outside vendor until at least the middle of January, after the motion to compel was filed.

Defendant responds that Mr. Morishita's deposition testimony is inconclusive regarding the time frame during which he completed the templates and databases. According to Defendant's counsel, Mr. Dean, Defendant has been in the process of beginning production of the claims payment data since the fall of 2009, but due to the fact that Defendant was starting from scratch, a lot of work was required to figure out how to extract and compile the information. As a result of the work, a sample data base was provided by Defendant to Mr. Dean in November 2009 and then to Relators' counsel on December 4, 2009. The sample database and format of compilation was approved by Relators' counsel on December 23, 2009.

Additionally, Defendant argues that it is entitled to attorney fees of $25,705.00, because Relators failed to comply with the meet and confer requirements related to the claims payment data. Specifically, Defendant contends that Relators should have telephoned to discuss the status of the production prior to filing their second motion to compel. If they had done so, according to

MEMORANDUM DECISION AND ORDER - 13

Defendant, Relators would have discovered that production of the claims payment data was forthcoming and no motion to compel would have been necessary.

The Court does not believe the evidence before it supports the conclusion that Defendant delayed the production of the electronic claims payment data in bad faith. Nor does the evidence support an award of fees to Defendant for having to respond to the second motion to compel. The Court finds that the evidence regarding the justifications for and extent of Defendant's delay is unclear at best. Further, the Court cannot conclude, based on the record before it, that the motion to compel was the sole impetus for Defendant's production of the data. To the extent there is evidence that Defendant produced the information later than it could have, there also is evidence that Relators did not do everything they could have to make the discovery process more efficient. For example, the Court is puzzled by Relators' failure to call Defendant regarding the status of the claims payment data prior to filing the motion to compel the claims payment data when Relators knew about and agreed to the January 30, 2010 "aspirational goal" or deadline. Essentially, it appears to the Court that the majority of the discovery issues in this case are a result of the parties' inability to communicate effectively to this point in time. Although the Court recognizes that numerous letters have been exchanged, the efficacy of these letters is questionable. Therefore, the Court will not sanction or award attorney fees to either party at this time.

## **ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)      The Plaintiff's Motion to Compel (Docket No. 91) is granted in part and denied in part as stated herein;

2)      The Motion for Attorney Fees and Sanctions (Docket No. 92) is denied; and

3)      The parties shall file a joint report regarding the current status of the discovery issues they were directed to discuss during their Court ordered meet and confer conference on April 7, 2010, within ten (10) days of the date of this order or no later than May 6, 2010.



DATED: April 26, 2010

Honorable Candy W. Dale
Chief United States Magistrate Judge

MEMORANDUM DECISION AND ORDER - 15